FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

'07 OCT -2 PM 5:00

CLERK
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR407-037 |
| ) | |
| JOSE MARTIN OROZCO-CUELLAR, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

In a previous Report and Recommendation, the Court addressed defendant Orozco-Cuellar's contentions (raised in his motion to suppress, doc. 73) that his arrest was unlawful and that his post-arrest statements to Special Agent Blankley were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The resolution of those issues was based upon the parties' stipulation of facts and did not require an evidentiary hearing. Doc. 91 (Report and Recommendation entered on June 18, 2007). Defendant's motion to suppress, however, also made the "alternative" argument that his statements were "involuntarily given." Doc. 73, at 9, 10. Nothing in the record indicates that the parties

intended their stipulation to encompass both the <u>Miranda</u> and the voluntariness inquiries, however, and thus the Court did not address the voluntariness question in its initial Report and Recommendation. Because a defendant who contests the voluntariness of his statements is entitled by both the Constitution and federal statute to an evidentiary hearing, <u>Jackson v. Denno</u>, 478 U.S. 368 (1964); 18 U.S.C. § 3501(a), the Court conducted an evidentiary hearing on July 16, 2007. The sole witness at that hearing was Special Agent Jeremi Blankley, the Immigration and Customs Enforcement agent in charge of the investigation. The evidence adduced at that hearing establishes that defendant's statements to Agent Blankley were entirely voluntary.

As noted in the previous Report and Recommendation, a team federal and state agents investigating a marijuana smuggling operation stopped a marijuana-laden truck and two other vehicles that were traveling in tandem on an interstate highway. Doc. 91 (setting forth the background of the investigation and the facts surrounding the stop). As Agent Blankley assisted in the stop of one of the other vehicles, a separate group of officers stopped the gray Honda Accord driven by defendant Orozco-Cuellar. They placed defendant under arrest and

transported him to a nearby weigh station pursuant to a pre-arranged plan developed by Agent Blankley. At the weigh station, Agent Blankley approached defendant, identified himself as a federal agent, and asked whether defendant spoke English. Defendant confirmed that he did. Agent Blankley then asked if defendant would agree to speak with him about the situation, and defendant indicated that he was willing to do so.

Defendant, who was handcuffed with his arms in front of his body,[1] got out of the patrol car and walked unaided with Agent Blankley and a second agent to a canopied structure near the weigh station for questioning. The agents were dressed casually with their badges on their belts and guns holstered on their hips.[2] As the three men walked toward this outbuilding, defendant spontaneously stated that "The green's not mine, the green's not mine," which prompted a brief conversation with Agent Blankley prior to the administration of the standard Miranda warnings. See doc. 91, at 3-4, 9-14.

---

[1] Because defendant had a shoulder injury, the arresting officers elected not to restrain him with his hands behind his back.

[2] Agent Blankley testified that when he assisted in the stop of one of the other vehicles, he had his weapon drawn and at the "ready position," and presumably the entire arrest team (including the officers who stopped Orozco-Cuellar) employed this procedure when first encountering suspects believed to be engaged in a large drug smuggling venture.

Defendant, who elected not to testify at the evidentiary hearing, contends that his statements to Agent Blankley were involuntary. Defendant alleges that the circumstances surrounding his arrest and transport—casually dressed men with guns taking him to a weigh station outbuilding rather than to a police station—along with his lack of proficiency in the English language created a confusing situation in which he feared for his life. Furthermore, defendant argues that the government has failed to meet its burden of showing that his statements were voluntary, as Agent Blankley had no personal knowledge of what happened at the scene of defendant's arrest and during his transport to the weigh station.

For a statement by a defendant to be admissible at trial, it must be "the product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The statement "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Colorado v. Connelly, 479 U.S. 157, 163 (1986). In determining voluntariness, the Court must assess "the totality of the circumstances—both the characteristics of the accused and the details of

the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession. Connelly, 479 U.S. at 163 n.1; United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992). Ultimately, the Court must determine whether a statement is the "'product of an essentially free and unconstrained choice by its maker' or whether the defendant's 'will has been overborne and his capacity for self-determination has been critically impaired.'" Devier v. Zant, 3 F.3d 1445, 1455-56 (11th Cir. 1993) (quoting Culombe, 367 U.S. at 602)).

Agent Blankley, speaking in a calm and respectful tone so as to establish rapport with a person he wished to interview, determined that defendant spoke English, identified himself as a federal agent, and asked if he could speak with defendant. After consenting to the agent's request, defendant exited the police car and began to walk with the agents toward the outbuilding, when he suddenly exclaimed "The Green's not mine." During the ensuing abbreviated conversation with the agent, defendant was coherent and alert, appeared to understand

5

what the agent said to him, and had no difficulty communicating with the agent. At no time did the agent threaten defendant or promise him any benefit in exchange for his cooperation. In fact, the agent had to interrupt defendant in order to administer the <u>Miranda</u> warnings.

There is no evidence of record that defendant believed that he was in physical danger or was about to be shot, as defense counsel suggested at the hearing. But even if defendant had harbored such a subjective belief, his state of mind is immaterial without some indication of police misconduct. <u>Connelly</u>, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). Under the circumstances as described by Agent Blankley, defendant's spontaneous statements were not the result of any form of government coercion and were entirely voluntary.

Because Agent Blankley, the government's sole witness, was not present when other officers stopped defendant's car and arrested him, defendant contends that the government has failed to meet its burden of proof on the voluntariness issue. Defendant's suppression motion merely alleges that his statements were "involuntarily given," without providing any further explanation or citing any evidence or argument in support of

that contention. Doc. 73. Defendant, therefore, calls on the Court to speculate as to what *could* have happened at the scene of his arrest rather than alleging anything in particular.

The Court rejects this line of reasoning, as it would essentially require the government to disprove every possible hypothesis that would make his statements involuntary. Although defendant contends that this uncertainty creates doubt as to whether his statements were coerced in some way, the government need only prove by a preponderance of the evidence that his confession was voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972). Where a Jackson-Denno motion lacks particularity, as does defendant's, the government cannot be expected to assume that a defendant is challenging circumstances apart from those immediately surrounding the making of the challenged statement. If defendant had wished to counter the government's evidentiary showing with evidence that coercive measures designed to extract a confession had been employed by the officers who initially stopped his vehicle, he was free to offer his own testimony or call the arresting officers as his own witnesses. He chose not to do so, and he cannot fault the government for

7

failing to call witnesses that it did not perceive to be pertinent to the voluntariness inquiry.

"Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative." Jackson v. Denno, 378 U.S. 368, 390 (1964). Here, the facts are undisputed, there is no question of Agent Blankley's credibility, and defendant requests that inferences be drawn not from established facts, but from utter speculation. Considering the totality of the circumstances as established by the evidence adduced at the evidentiary hearing, the Court finds that the government has demonstrated by a preponderance of the evidence that defendant's statements were entirely voluntary. Lego, 404 U.S. at 489; Jackson, 378 U.S. at 391. There is no evidence in this record of any threats, use of force, improper inducements or deception, or any other conduct by law enforcement agents designed to coerce defendant into making a statement. Indeed, defendant's unprompted utterance came as a surprise to the agents, who had yet to administer Miranda warnings or

ask defendant any questions. Defendant initiated the conversation out of an apparent eagerness to talk, not as a result of any improper conduct by the investigating agents. Accordingly, defendant's motion to exclude his statements as involuntary should be DENIED.

**SO REPORTED AND RECOMMENDED** this 2nd day of October, 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA